UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH DRAKE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>Defendants. | Case No. 18-cv-01955-VC<br><br>**ORDER DENYING TRO APPLICATION** |

The plaintiffs – five homeless people and an advocacy group called "Homeless Action!" – seek a temporary restraining order blocking the government from closing the Roseland encampments in Santa Rosa. They contend, among other things, that enforcement of Santa Rosa's anti-camping ordinance and provisions of the California Penal Code to remove residents from the encampments violates the Eighth Amendment (among other constitutional and statutory provisions) by punishing them for their homeless status. The Court held an evidentiary hearing on April 5, 2018, taking testimony from residents of the encampments and relevant government officials.

A plaintiff seeking a temporary restraining order or a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Kwong v. Santa Clara County Sheriff's Office*, No. 17-CV-02127-BLF, 2017 WL 1374794, at *1 (N.D. Cal. Apr. 17, 2017). If a plaintiff raises "serious questions going to the merits," a court may grant interim relief if the balance of hardships "tips sharply in the plaintiff's

favor," the plaintiff is likely to suffer irreparable harm, and the interim relief is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (citation omitted).

With respect to the merits, there is a strong argument that the Eighth Amendment (and perhaps also the Due Process Clause) precludes the government from enforcing an anti-camping ordinance against homeless people when it has no shelter available for them. *See Cobine v. City of Eureka*, No. C 16-02239 JSW, 2016 WL 1730084, at *6 (N.D. Cal. May 2, 2016); *cf. Jones v. City of Los Angeles*, 444 F.3d 1118, 1136-38 (9th Cir. 2006), *vacated by settlement*, 505 F.3d 1006 (9th Cir. 2007). Moreover, the common assumption that it's enough for the government simply to make temporary shelter beds available is likely wrong. Even if shelter beds are available, the ability of the government to take enforcement action against homeless people who are camping should depend on the adequacy of conditions in the shelters. This is a particular concern for people with disabilities, who sometimes struggle to see their needs met in temporary shelters.[1] And after all, many homeless people have disabilities. *See* Pls.' Request for Judicial Notice, Ex. 2 at 43, Dkt. No. 21-2. But in this case, the record developed so far suggests the government has made adequate shelter options available to encampment residents – options more humane and responsive to the needs of homeless people than the stereotypical warehouse floor strewn with hundreds of cots. The record further suggests that, although many residents have accepted placement in a temporary shelter, at least some are unwilling to entertain this option, even when the government is willing to offer accommodations. Given this state of the record, the plaintiffs have not established a strong likelihood of success on their claims.[2]

---

[1] *See, e.g.*, Claudia Vargas, *Homeless in Philadelphia: Overcrowded Shelters, Lack of Affordable Housing Hit Those with Disabilities Even Harder*, Philadelphia Inquirer (Feb. 28, 2018), http://www.philly.com/philly/news/politics/disability-homelessness-shelter-overcrowding-affordable-housing-shortage-20180228.html [https://perma.cc/J8ZP-EHWL]; Nikita Stewart, *Under Settlement, City Shelters Will Do More for the Disabled*, N.Y. Times (May 18, 2017), https://www.nytimes.com/2017/05/18/nyregion/homeless-shelters-disabled-people-settlement.html [https://perma.cc/9MV3-C5MR].

[2] Weaker still are the plaintiffs' claims challenging the government's plans for handling and storing encampment residents' property upon closure, in light of the notice and storage options provided and the enforcement process described during the evidentiary hearing. *See Cobine*,

On the issue of irreparable harm, three of the five individual plaintiffs will not be harmed by the closure, because the government has identified permanent supportive housing for them (and for a couple other residents of the Roseland encampments). For the other two individual plaintiffs, as well as other encampment residents, there is no doubt they will suffer a degree of harm from disbanding the community where they've lived since at least November 2017. But because the government has offered these two plaintiffs and other encampment residents temporary shelter that the record suggests is adequate, that harm has been minimized.

Two other developments from the evidentiary hearing further mitigate harm to encampment residents. First, a key government witness testified that no one will be removed from the encampments until they have been assessed for services and housing, or have made clear that they do not want to be assessed. Second, by the end of the hearing, counsel for the plaintiffs acknowledged that these encampments must be closed, and argued that the primary thing the plaintiffs need is more time to ensure that encampment residents can be assessed for services and a housing placement. Although the current record suggests that encampment residents have already had enough time and opportunity to be assessed, the government has now announced it will not begin the process of clearing the encampments until April 19, 2018. Dkt. No. 34. Hopefully, now that advocates for this community know the application for a temporary restraining order has been denied, they will use the extra time to encourage the remaining residents to participate in assessments.

The last two factors – the balance of hardships and the public interest – weigh against an order barring the government from closing the encampments. As already discussed, the harm from displacement of encampment residents appears significantly mitigated by the shelter options available, the efforts made by the government to get people into shelter or supportive housing that meets their needs, and the additional time the government has agreed to provide for assessment and relocation. Meanwhile, the government and the Santa Rosa community would

---

2016 WL 1730084, at *4.

be harmed by further delay in closing the encampments.  Before the fires, there was already a severe housing crisis in Santa Rosa.  After the fires, the crisis has gotten worse.  The land where the encampments sit is designated for development of 175 apartment units, with 75 of them to be available at below market rate.  The development project cannot meaningfully move forward while the encampments remain.  Accordingly, this is not a case in which a community seeks to clear an encampment merely because it's a nuisance, without stepping up to provide adequate housing options for the people who would be displaced.  In a case like that, the balance of harms and the public interest would likely tip sharply in favor of encampment residents.  But in this community, in these circumstances, and on this land, a restraining order barring closure of the encampments is not warranted.

**IT IS SO ORDERED.**

Dated: April 7, 2018

_____
VINCE CHHABRIA
United States District Judge