Jeffery Hoffman, SBN: 118768
jhoffman@crla.org
Alicia Roman, SBN:  260101
CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
1160 N. Dutton Avenue, Suite 105
Santa Rosa, CA 95401
Telephone: (707) 528-9941; Fax: (707)
528-0125

Attorney for Plaintiffs (additional counsel
for Plaintiffs continued on last page)

SUE A. GALLAGHER, City Attorney
(SBN 121469)
ROBERT L. JACKSON, Assistant City
Attorney (SBN 101770)
City of Santa Rosa
100 Santa Rosa Avenue, Room 8
Santa Rosa, California 95404
Telephone: (707) 543-3040
Facsimile: (707) 543-3055

Attorneys for Defendant
City of Santa Rosa

BRUCE D. GOLDSTEIN #135970
County Counsel
ALEGRÍA G. DE LA CRUZ # 229713
Alegria.DeLaCruz@sonoma-county.org
Chief Deputy County Counsel
CHRISTOPHER W. MAGAÑA #287256
Christopher.Magana@sonoma-county.org
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624

Attorneys for Defendants
Sonoma County; Sonoma County
Community Development Commission

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nicholle Vannucci, Ellen Brown, and Shannon Hall, *individuals*; and Homeless Action!, *an unincorporated association*, <br> Plaintiffs, <br> v. <br><br> County of Sonoma, Sonoma County Community Development Commission, City of Santa Rosa, Does 1 to 10, <br><br> Defendants. | Case No.:  3:18-cv-01955-VC <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> **Date:  May 14, 2019** <br> **Time: 1:30 PM** <br> **Room:  Courtroom 4** <br> **Judge:  Hon. Vince Chhabria** |

### 1.  Jurisdiction and Service

**Plaintiffs:**  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12132 and 42 U.S.C. § 1983 because Plaintiffs' claims arise under the laws and Constitution of the United States.  The court has supplemental jurisdiction over Plaintiffs' state law and state constitutional claims because Plaintiffs' state claims are related to Plaintiffs' federal claims, arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the U.S. Constitution.

All Defendants have been served with the Summons and Complaint by personal service, and have been served with the Verified Amended Complaint and the Supplemental Complaint by ECF.

Plaintiffs have asked Defendants to stipulate to the voluntary dismissal of Plaintiff Ellen Brown from the litigation.

**All Defendants:** The Court previously approved voluntary dismissals of plaintiffs Steven Robert Singleton, Samantha Jenkins, and Deborah Drake after it became apparent that they did not have Article III standing to seek injunctive relief.  Plaintiffs have proposed to voluntarily dismiss Ellen Brown for the same reason as Ms. Brown has obtained housing. Defendants have agreed to dismissal of Ms. Brown, provided she first responds to pending written discovery requests and agrees to appear for her deposition without the necessity of service of a subpoena.

The parties disagree with regard to the viability of continued action by Ms. Vannucci. She moved from Sonoma County several months ago and now resides in Stockton and defendants are informed and believe she is no longer homeless. Plaintiffs contend that because Ms. Vannucci "would like to return to Santa Rosa" but is "afraid that, if [she] is still homeless, [she] will be harassed, cited or arrested by Santa Rosa Police", she continues to have standing; defendants contend she no longer has Article III standing to pursue injunctive relief against the defendants because she moved to Stockton and may no longer be homeless.

## 2. Facts

**Plaintiffs:**

Plaintiffs Nicholle Vannucci, Ellen Brown, and Shannon Hall, along with the unincorporated advocacy organization Homeless Action!, have brought this lawsuit to challenge the policies and practices of Defendants City of Santa Rosa, County of Sonoma, and Sonoma County Community Development Commission with respect to the criminalization individuals' living outdoors, in the absence of available shelter that meets those individuals' disability-related and other needs.  Ms. Vannucci is currently homeless in Stockton, California.  She would like to return to Santa Rosa but is afraid that, if she is still homeless, she will be hassled by the Santa Rosa Police.  Ms. Brown recently obtained housing and has asked Defendants to stipulate to her dismissal from the case.  Ms. Hall is currently homeless in Sonoma County.

Plaintiffs Vannucci, Brown, and Hall were residents of homeless encampments on the Roseland site, a site owned by Defendant Sonoma County Community Development Commission (CDC) in Santa Rosa, California until April 2018.  Plaintiffs Vannucci, Brown, and Hall are people with disabilities; the Roseland Encampments residents, like Sonoma County's unsheltered homeless population more generally, are disproportionately people with disabilities.

Plaintiffs filed this action on March 30, 2018, and sought a Temporary Restraining Order to prevent the closure of the Roseland Encampments (then scheduled for April 3, 2018) until every resident had had the opportunity to be assessed for and placed in shelter that met their needs, including disability-related needs. The Court denied the TRO, and Defendants cleared the Roseland site on April 20, 2018.  Many encampment residents, including individual Plaintiffs and others assisted by Plaintiff Homeless Action!, had explained to Defendants and their employees and agents that, because of disabilities, they were unable to stay in a crowded shelter and requested reasonable accommodations in shelter placement.  However, many residents, including Shannon Hall, did not receive any offer of adequate shelter before Defendants closed the encampments.  CDC offered limited storage for Encampment residents on the date of the

Joint Case Management Statement; Case No. 3:18-cv-01955-VC

encampment closure, but its contractors destroyed or discarded the personal property of several encampment residents, including Shannon Hall.

Defendants' actions with respect to the Roseland Encampments exemplify their practices of penalizing homeless individuals for living outdoors in the absence of available shelter that meets those individuals' needs, and of operating a homeless system of care that does not adequately meet the needs of homeless individuals with disabilities.   These practices continued through the City's and County's clearance of a homeless encampment the Joe Rodota Trail in May 2018.  Defendants have continued to threaten homeless individuals with citation or arrest for engaging in life sustaining activities outdoors, and to seize and destroy the personal property of homeless individuals.  For example, Plaintiff Shannon Hall, who has requested a reasonable in shelter placement because staying in a crowded shelter exacerbates the symptoms of her disability, received a citation from the Santa Rosa Police Department in February 2019, for "disorderly conduct" and "illegal lodging" for being in Santa Rosa City property; no shelter was made available to her at that time.  The number of unsheltered homeless individuals living in the County still far exceeds the number of available shelter beds, and many of those beds are not appropriate for certain homeless individuals for reasons that generally include those individuals' disabilities.

**Defendants CDC and County of Sonoma:**

Plaintiffs' Eight Amendment claims against the CDC and County lack a factual basis. As noted by below by the City, Plaintiffs Vannucci, Brown, and Hall each admit they were not cited, arrested, or charged with violating any camping ordinance during the closure of the Roseland Village and Joe Rodota Trail encampments. Santa Rosa Police Department Sgt. Jonathan Wolf's deposition testimony corroborates these admissions. Notably, Plaintiffs do not identify any specific allegations against a Sonoma County law enforcement officer during the closure of the Roseland Village, Joe Rodota Trail encampments, or at any other time or location.

Plaintiffs' Fourth Amendment claims against the CDC and County lack a factual basis. Neither Plaintiffs Vannucci nor Brown allege the County or CDC seized or destroyed their property during the closure of the Roseland Village and Joe Rodota Trail encampments. Ms.

Brown does not allege she resided at the Joe Rodota Trail encampment at the time it was closed. Ms. Hall only alleges the loss of personal property at the Roseland Village encampment, but has not offered any evidence the CDC or County is responsible for her loss. CDC witness Benjamin Wickham testified at his deposition that only items clearly identifiable as trash and items designated by its owner as trash were disposed of at the Roseland Village encampment by CDC and County personnel.

With respect to the homeless system of care, the evidence will show that the County and CDC, through their contractors, routinely accommodate individuals with disabilities seeking services, including housing services. With respect to the individual plaintiffs, the evidence will show Defendants' repeated efforts to place Plaintiffs Vannucci, Brown, and Hall in suitable housing before, during, and after the closure if the Roseland Village and Joe Rodota encampments. Plaintiff Brown accepted housing at Sam Jones Hall, without requesting reasonable accommodations for her disabilities, and successfully transitioned from shelter housing to permanent housing with the aid of the CDC.

**Defendant City of Santa Rosa:**

With regard to alleged Eighth Amendment violations, Plaintiffs Brown, Hall and Vannucci have admitted in response to the City's Requests for Admissions that they were never cited, arrested, or charged with any violation of any ordinance, or subjected to any use of force by any Santa Rosa Police Officer at or about the time of the closures of the Roseland or Joe Rodota Trail closures.  This is corroborated by the testimony of Sgt. Jonathan Wolf.

When asked about other incidents, Plaintiff Brown concedes she has never been cited. Plaintiff Vannucci was cited once on June 18, 2018 when she was cited for violation of Fish and Game Code §5652 for throwing litter, waste and debris in an area within 150' of the Santa Rosa Creek, and Ms. Hall was cited once on February 12, 2019 for violation of California Penal Code §647(e). Other than these two incidents, neither of which were for violation of a camping ordinances, plaintiffs rely entirely on the "threat of arrest" to support their claim that Santa Rosa Police subjected them to cruel and unusual punishment.

With regard to plaintiffs' claim of destruction of personal property, plaintiffs have presented no evidence to support their claim that Santa Rosa Police seized or destroyed their personal property at the Roseland or Joe Rodota Trail encampments. This is corroborated by the testimony of CDC witness Benjamin Wickham and Sgt. Jonathan Wolf, both of whom testified that no property other than trash was destroyed at those closures and that disposal of such property was done by CDC and their contractors, not the Santa Rosa Police.

Further responses to written discovery are forthcoming, and the depositions of plaintiffs have yet to be completed, but defendant City of Santa Rosa anticipates that as concerns the Roseland and Joe Rodota Trail encampment closures, the evidence will show that the SRPD did not own the property, did not initiate the closure of the encampments, did not undertake destruction or storage of property, did not cite or arrest, and did no more than to remind residents that if they did not vacate the property as demanded by the owner of the property CDC they would be subject to citation or arrest for trespassing on the property after being told by the owner to leave.

As to alleged violations elsewhere in the City, the evidence will show that beginning with the closure of the encampment at the Farmers Lane Extension in July of 2017, continuing through the closure of the 101 overpass encampment, the Santa Rosa Police Department, acting with the HOST team at Catholic Charities, provided several days' notice of pending closures, engaged in outreach to encourage individual to enter the coordinated entry system and undergo assessment, took enforcement action only when suitable shelter was available, made available storage for personal property, did not seize personal property, but destroyed only such property as was discarded, trash, or posed a health risk in handling.

### 3.  Legal Issues

**Plaintiffs Legal Contentions:**

1.      Defendants' forced removal and/or threatened prosecution of homeless persons' who lacked alternative shelter violated those residents' right to be free from cruel and unusual punishment under the U.S. and California Constitutions.

2.      Defendants' seizure and/or destruction of homeless persons' personal property violated those persons' protection from unlawful search and seizure under the U.S. and California Constitutions.

3..  Defendants' seizure and/or destruction of homeless persons' personal property without adequate notice or a pre-deprivation hearing violated their right to due process of law under the Fourteenth Amendment to the U.S. Constitution.

4.      Defendants' enforcement of the City's anti-camping ordinance, including the seizure and destruction of personal property necessary to protect homeless individuals from the elements, amounts to state-created danger in violation of the Fourteenth Amendment's guarantee of substantive due process.

5.      Defendants' removal of the Roseland Encampments and the Joe Rodota Trail encampment residents, and their policies and practices of criminalizing homelessness implicated by the sweep, have an unlawful discriminatory effect on persons with disabilities, in violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and California Government Code 11135.

6.      Defendants have failed to make reasonable accommodations in their policies and programs, in violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and Government Code 11135.

7.      Defendants were aware that their actions disproportionately harmed people with disabilities and denied them reasonable accommodations, and therefore, their actions are intentional discrimination in violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and Government Code 11135.

8.      Defendants' actions and practices have, with intent and in effect, discriminated against people with disabilities in the provision of housing services, in violation of the Fair Housing Act (42 U.S.C. § 3604 et seq.) and the California Fair Employment and Housing Act (Gov't Code § 12955 et seq.).  The discrimination includes the failure to provide reasonable accommodations and the failure to affirmatively further fair housing.

9.      Plaintiffs claim entitlement to declaratory and injunctive relief, as well as attorneys' fees.

**Defendants' Legal Contentions:**

### Defendants CDC and County of Sonoma

1.      Whether the Eighth Amendment's prohibition on "cruel and unusual punishment" prohibits Defendants from requesting enforcement of state and local laws as applied to Plaintiffs in order to clear an unauthorized homeless encampment a) on property owned by a public entity and operated in a proprietary manner; or b) along a public trail when adequate shelter and housing alternatives are available for those residing at the encampment.

2.      Whether Defendants violated individual Plaintiffs' rights to be free from unreasonable searches and seizures under the Fourth Amendment and individual Plaintiffs' procedural due process rights under the Fourteenth Amendment when they provided encampment residents with two-months' notice to remove their property from the Roseland Village site, offered to store residents' personal belongings for a period of up to 90 days, and provided them with a phone number to retrieve stored property.

3.      Whether, when there is suitable shelter and housing available, Defendants' request for enforcement of the City's anti-camping ordinance as applied to Plaintiffs amounts to a state-created danger in violation of the Fourteenth Amendment's guarantee of substantive due process.

4.      Whether individual Plaintiffs are "disabled" within the meaning of Title II of the Americans with Disabilities Act and related provisions.

5.      Whether Defendants' conduct in offering housing assessment and appropriate housing to residents of the Roseland Village and Joe Rodota Trail encampments prior to closure of the encampments had an unlawful discriminatory effect on Plaintiffs in violation of Title II of the Americans with Disabilities Act (ADA), section 504 of the Rehabilitation Act, and California Government Code section 11135.

6.      Whether Defendants' offer to individual Plaintiffs, and other encampment residents with disabilities, reasonable accommodations in housing placement—including  but not limited to partitions, choice in bed location, the option of low occupancy rooms—violates Title II

of the ADA, section 504 of the Rehabilitation Act, and California Government Code section 11135; and, relatedly, whether Plaintiffs' requests for single occupancy or apartment-like housing would fundamentally alter the nature of, or result in undue financial and administrative burdens with respect to, the Coordinated Entry System and related services for individuals experiencing homelessness.

7.      Whether Defendants' conduct in closing the Roseland Village and Joe Rodota Trail encampments—including but not limited to two-months' notice, the option to store personal belongings; the option of accepting appropriate housing with reasonable accommodations or to voluntarily relocate—had an unlawful discriminatory effect on Plaintiffs in violation of Title II of the Americans with Disabilities Act (ADA), section 504 of the Rehabilitation Act, and California Government Code section 11135.

8.      Whether Defendants, through their conduct, as described above, in closing the Roseland Village encampments, intentionally discriminated against Plaintiffs with disabilities in violation of Title II of the Americans with Disabilities Act (ADA), section 504 of the Rehabilitation Act, and California Government Code section 11135.

9.      Whether Defendants administer the Coordinated Entry System in a manner that discriminates against individuals with disabilities in violation of the federal Fair Housing Act, and the California Fair Employment and Housing Act.

**Defendant City of Santa Rosa**

1.      That a claim for cruel and unusual punishment in violation of the Eighth Amendment must be premised on an actual citation, arrest and/or conviction and cannot be premised on a threat of enforcement;

2.      That defendant did not take actions to "criminalize" the status of homelessness, but gave proper notice, engaged in proper outreach to encourage individuals to be assessed, took action to close encampments only when shelter was available,  considered and acted to provide suitable accommodations upon claims of disability, undertook to provide storage for personal belongings, and did not seize or destroy property other than trash, discarded items,

and property posing a health risk, all in conformance with the law in effect at the time, and even in compliance with the law as later announced in *Martin v. Boise.*

### 4.  Motions

The Court denied Plaintiffs' TRO motion in a decision dated April 7, 2018.

The Court denied Defendant City of Santa Rosa's motion for a definitive statement pursuant to FRCP 12(e) and to dismiss the First and Fifth through Twelfth Causes of Action of the Supplemental Complaint for failure to state claims upon which relief can be granted pursuant to FRCP 12(b)(6) on September 20, 2018.

**Plaintiffs** anticipate filing a motion for summary judgment or a motion for partial summary judgment.  **All Defendants** anticipate filing a motion for summary judgment or a motion for partial summary judgment.

### 5.  Amendment of Pleadings

Plaintiffs filed and served their Verified Amended Complaint on June 1, 2018, and their Supplemental Complaint on July 17, 2018. Plaintiffs were given until April 15 in which to file a further amendment, and defendants expected plaintiffs to join additional defendants or join the County Sheriff.  Plaintiffs have not filed such an amendment.

### 6.  Evidence Preservation

The parties met and conferred pursuant to FRCP 26(f) and have taken, necessary, reasonable and proportional steps to preserve evidence relevant to issues reasonably evident in this case.

### 7.  Disclosures

The parties exchanged the required initial disclosures pursuant to FRCP 26.

### 8.  Discovery

**Plaintiffs:**  Plaintiff Homeless Action! served requests for production of documents on each Defendant on August 24, 2018 and amended requests for production with a narrower focus on September 27, 2018.  The parties filed Joint Discovery Letters regarding Defendants' respective production obligations in January 2019, and the Court ordered the parties to meet and confer to formulate a plan for Defendants' responses by March 22, 2019 (ECF No. 100).  The parties met and conferred, and Defendants produced additional documents; the City also produced a partial

privilege log.  Significant production by both the City and the County Defendants (including production of a privilege log by the County Defendants) remains outstanding, and Plaintiffs anticipate filing one or more Joint Discovery Letters regarding the City's and the County Defendants' outstanding production.

Plaintiffs have conducted depositions of Defendants' representatives.  The depositions of the County's and CDC's deponents remain open by agreement of the parties, pending completion of the County's and CDC's document production.  Plaintiffs requested a similar agreement regarding the City's deponents in light of the City's failure to produce relevant documents prior to the depositions, but the City did not agree to keep the depositions open; the City indicated that it would make its deponents available for the limited purpose of questioning them about documents produced subsequent to their depositions.  Plaintiffs anticipate that the Court's intervention may become necessary regarding the depositions of the City's designees and/or Sergeant Jonathan Wolf of the Santa Rosa Police Department.

In addition to the further depositions described above, Plaintiffs anticipate serving additional limited written discovery requests on Defendants prior to the close of non-expert discovery.

Plaintiffs also served subpoenas for deposition and for the production of documents on Catholic Charities of the Diocese of Santa Rosa and Jennielynn Holmes, Catholic Charities' Chief Program Officer; Plaintiffs began the deposition of Ms. Holmes and have received limited production of documents by Catholic Charities.  The deposition of Ms. Holmes remains open, and several issues regarding Catholic Charities' production remain outstanding, including the negotiation among the parties of a stipulated protective order that would cover a significant number of the documents to be produced by Catholic Charities.

**Defendants CDC and County of Sonoma:**

Defendants continue to produce documents responsive to Plaintiffs' document requests. Plaintiffs' document requests are peppered with overly broad blanket requests for "any and all documents relating to 'x'." Such requests inordinately increase the universe of responsive documents requiring collection, review, and production. As a result, Defendants' have prioritized

production of documents of individuals notice for deposition and have sought to produce such documents prior to a custodians' deposition.

Defendants served document requests on Plaintiffs and have agreed to an extension of May 16, 2019 for production. Defendants will join the City in deposing Plaintiffs in May 2019.

**Defendant City of Santa Rosa:**

Defendant City of Santa Rosa served each plaintiff with requests for admissions, demands for production of documents, and special interrogatories. Incomplete responses were provided. The parties have met and conferred in a lengthy telephone conference and plaintiffs have promised additional responses. Defendant City anticipates that the Court's involvement will be required.

Defendant City noticed the depositions of the individual plaintiffs and representatives of Homeless Action!; however, those depositions have been postponed pending receipt of additional responses to written discovery. We anticipate completing those depositions in late May.

Defendant City also anticipates that the Court's involvement will be required to resolve questions regarding the burden and scope of plaintiffs' document demands, particularly with regard to (1) arrest and incident reports of all homeless related incidents, and (2) production of body worn camera videos of individuals other than the named plaintiffs and protection of the privacy of individuals depicted in such videos if required to be produced.

9. **Class Actions—**N/A

10. **Related Cases**—None known.

11. **Relief**

Plaintiffs have requested:

     1.      Preliminary and permanent injunction, enjoining Defendants from seizing and disposing of homeless individuals' property in violation of their state and federal constitutional rights.

     2.      Preliminary and permanent injunction, enjoining Defendants from citing or arresting individuals for violation of the City's and County's anti-camping ordinances.

3.      Preliminary and permanent injunction, enjoining Defendants from discriminating against people with disabilities and failing to offer and provide reasonable accommodations to people with disabilities, including with respect to shelter placements.

4.      Declaratory judgment that Defendant's policies, practices, and conduct violate Plaintiffs' rights under the ADA, Section 504 of the Rehabilitation Act, Government Code section 11135, FHA, FEHA, and the Constitutions of the United States and California.

5.      Peremptory writ of mandate commanding Defendants to cease actions that discriminate against people with disabilities in the administration of their programs.

6.      Costs of suit and reasonable attorney's fees as provided by law.

7.      Any other relief as the court deems just and proper.

## 12. Settlement and ADR

The parties agreed that Judge Chhabria would mediate the case and executed waivers allowing him to serve as settlement and trial judge.  The parties have engaged in extensive settlement negotiation but have not reached settlement.

**Plaintiffs**:  Plaintiffs are open to further settlement discussions with Judge Chhabria and would like to discuss the timing and format of such discussions at the Case Management Conference.

**Defendants CDC and County of Sonoma:**  Defendants CDC and County are open to continuing Court-facilitated settlement discussions with Plaintiffs.  But Defendants continue to have concerns about the mutuality of any settlement agreement with three individuals and an amorphous advocacy organization.

**Defendant City of Santa Rosa:**  The City is not opposed to further settlement discussions with the Court acting as mediator; however, the City views such efforts as fruitless unless and until plaintiffs are prepared to discuss certain terms in what the City views as a more reasonable light. This can perhaps be explored at the Case Management Conference by way of brief in-chambers discussions with each party.

## 13. Consent to Magistrate Judge for All Purposes

Plaintiffs have declined the jurisdiction of a magistrate judge for all purposes.

**14. Other References**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing Issues**

The parties have not yet identified issues that can be narrowed by agreement. However, the parties are open to discussion at the Case Management Conference or in a settlement conference as to whether a stipulation for an injunction and/or bifurcation might be reached whereby certain terms of a final injunction might be resolved by way of stipulation, and other terms might be presented to the Court for judgment after presentation of evidence.  For example, the parties may be in general agreement on most terms, but disagree on discrete issues such as the length of notice that must be given before enforcement actions against individuals or larger encampments may be undertaken, and the timing, nature and complexity of a grievance process for an individual who challenges the suitability of shelter to accommodate a disability.

**Defendants** propose each Party update the Court as to the results of their attempts to reach a settlement, and, based on those updates, continue to a focused, narrow settlement negotiation session with the Court.

**16. Expedited Trial Procedure**

Expedited Trial Procedure of General Order No. 64 is inappropriate for this case.

**17. Scheduling**

The Court has ordered the following schedule:

| Last Day to Amend Pleadings | April 15, 2019 |
|---|---|
| Further Case Management Conference | May 14, 2019 |
| Close of Non-Expert Discovery | June 15, 2019 |
| Deadline to Designate Experts; Opening Reports Due | June 28, 2019 |
| Deadline for Rebuttal Expert Designations | July 26, 2019 |
| Close of Expert Discovery | September 27, 2019 |
| Last Day for Hearing on Dispositive Motions | December 19, 2019 |
| Final Pretrial Conference | February 19, 2020 |
| Trial Begins | March 9, 2020 |

**18. <u>Trial</u>**

Plaintiffs have demanded a trial by jury, and the parties anticipate a trial of 10 to 15 days.

**19. <u>Disclosure of Non-Party Interested Entities or Persons</u>**

Plaintiffs filed their Rule 3-15 "Certification of Interested Parties or Persons." Defendants

are exempt from the requirement pursuant to Civil Local Rule 3-15(a).

**20. <u>Professional Conduct</u>**

All attorneys have reviewed the Northern District Guidelines for Professional Conduct.

Dated: May 7, 2019              CALIFORNIA RURAL LEGAL ASSISTANCE
                                THE PUBLIC INTEREST LAW PROJECT
                                LAW OFFICE OF ALICIA ROMAN


                                By:      /s/Jeffery Hoffman
                                    JEFFERY HOFFMAN, Attorneys for Plaintiffs


                                SONOMA COUNTY COUNSEL'S OFFICE


                                By:      /s/ Christopher Magaña
                                    CHRISTOPHER MAGAÑA, Attorneys for Defendants
                                    County of Sonoma, Sonoma County Community
                                    Development Commission


                                SANTA ROSA CITY ATTORNEYS' OFFICE


                                By:      /s/ Robert L. Jackson
                                    ROBERT L. JACKSON, Attorneys for the City of Santa
                                    Rosa

## ECF ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I, Jeffery Hoffman, attest that I have

obtained concurrence in the filing of this document from the other signatories listed here.


May 7, 2019

_____/s/Jeffery Hoffman___

JEFFERY HOFFMAN, Attorneys for Plaintiffs




(Additional Counsel for Plaintiffs continued)

Melissa A. Morris, SBN: 233393
Michael Rawson, SBN: 95868
PUBLIC INTEREST LAW PROJECT
449 15th Street, Suite 301
Oakland, CA  94612
Telephone: (510) 891-9794; Fax: (510) 891-9727
Email: mmorris@pilpca.org
        mrawson@pilpca.org

Cynthia L. Rice, SBN: 87630
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
1430 Franklin Street, Suite 103
Oakland, CA 94612
Telephone: (510) 267-0762; Fax: (510) 267-0763
Email: crice@crla.org

Ilene J. Jacobs, SBN: 126812
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 D Street / P.O. Box 2600
Marysville, CA 95901
Telephone: (530) 742-7235; Fax: (530) 741-0854
Email: ijacobs@crla.org

Attorneys for Plaintiffs

Joint Case Management Statement; Case No. 3:18-cv-01955-VC