

**Michael Rawson**
 *Director*
 Extension 145
 mrawson@pilpca.org

**Craig Castellanet**
 *Staff Attorney*
 Extension 132
 ccastellanet@pilpca.org

**Lauren Hansen**
 *Staff Attorney*
 Extension 127
 lhansen@pilpca.org

**Valerie Feldman**
 *Staff Attorney*
 Extension 125
 vfeldman@pilpca.org

**Melissa A. Morris**
 *Staff Attorney*
 Extension 111
 mmorris@pilpca.org

**Noah Kirshbaum-Ray**
 *Legal Assistant*
 Extension 110
 nkirshbaum-ray@pilpca.org

**Linda Hill**
 *Office Manager*
 Extension 123
 lhill@pilpca.org

**Deborah Collins**
 *(Retired)*

**Stephen E. Ronfeldt**
 *(1942 - 2018)*

**Judith Gold**
 *(1952 - 2016)*

January 29, 2020

**VIA ECF.**

Hon. Vince Chhabria
Phillip Burton Federal Building
United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

January 29, 2019

  **Re:** ***Vannucci et al. v. County of Sonoma et al.* (Case No. Case No. 18-cv-01955-VC)**
    **Plaintiffs' Reply Regarding Request for Immediate Enforcement**

Dear Judge Chhabria:

  Plaintiffs write in reply to Defendant County of Sonoma's opposition to Plaintiffs' request for immediate enforcement of the Stipulated Preliminary Injunction (Injunction) in the above-reference case. Plaintiffs appreciate the opportunity to reply, and the Court's careful consideration of their request. As described in Plaintiffs' request of January 27, 2020, Plaintiffs do not seek to prevent—or even delay—the transition of individuals living on the Joe Rodota Trail (JRT) from living outdoors on the trail to adequate shelter or housing, nor do they seek to keep the JRT encampment in place indefinitely. Rather, Plaintiffs seek to ensure that, individuals who are currently living on the trail are neither forced to move nor subjected to citation and arrest until they have been provided an opportunity for assessment and an offer of adequate shelter or housing, as required by paragraph 3(a) of the Injunction.

  The evidence in the record—both the evidence submitted by Plaintiffs and that submitted by Defendants—demonstrates that a substantial number of JRT encampment residents have not yet been assessed and/or placed, and that, despite the County's recent efforts to expand and diversify its stock of available shelter options, there are not currently sufficient placement options available to accommodate every resident of the trail who wants placement by January 31, the arbitrary date the County has established to complete its enforcement action. Plaintiffs therefore request an order requiring that the County not take enforcement action against any individual on the trail until it has complied with the requirements of paragraph 3(a) for that individual, even if taking the time to do so would allow that individual to remain on the JRT beyond January 31, 2020.

Plaintiffs also request that the order clarify the meaning of "immediate hazard or obstruction" to ensure that any action taken pursuant to paragraph 3(c)'s exception is based on an individualized determination and current conditions as required by 3(c) rather than a past determination that the encampment as a whole is an immediate hazard.

**An order of the Court is necessary to prevent an imminent violation of the Injunction.**

In order to obtain relief from the Court, Plaintiffs do not need to establish that the alleged violation has already occurred, only that it is imminent and likely to occur. Here, the County acknowledges that only approximately half of the JRT residents have been assessed. *See* Declaration of Cruz Lopez, Exhibit C to Defendant County of Sonoma's Opposition, ECF No. 117-3, at ¶ 9. And the letters and declarations submitted by Plaintiffs demonstrate that a substantial number of those individuals who have not been assessed wish to be assessed and to accept adequate placement or shelter or housing, and that the County has been notified that those individuals want assessment and shelter. *See* Plaintiffs' Request, Exhibit 2, Exhibit 7, Exhibit 8, Exhibit 9;. Exhibit 9 to Exhibit 4 of Defendant County of Sonoma's Opposition, Declaration of Alegría De La Cruz, ECF 117-4. And, while the County has made progress toward assessment and offer of placement with respect to some of those individuals, it continues to hold firm on its self-imposed January 31, 2020, deadline to have the JRT encampment completely cleared. *See* Plaintiffs' Request, Exhibits 6, 11, ECF 116-6, 116-11. The County's opposition does not contradict Plaintiffs' understanding that, despite the County's stated intention "to offer the opportunity for assessment and adequate shelter to all people camped on the Trail", that it plans to clear the encampment by January 31, 2020, even if it has been unable to provide such opportunity, by invoking paragraph 3(c)'s immediate hazard exception based on a generalized determination that the encampment as a whole constitutes an immediate hazard. *See* Defendant County of Sonoma's Opposition, ECF No. 117, at 2. However, the County misinterprets the immediate hazard exception and is poised to misapply it, as discussed in greater detail below.

Plaintiff's goal in this request is to prevent the harm that the County's violation of the Injunction will cause to JRT encampment residents—displacement from the trail without adequate shelter, potential citation and/or arrest, violation of their constitutional rights, and potential temporary separation from or permanent loss of their personal property—before that harm occurs. While Plaintiffs have not foreclosed the possibility of seeking retrospective relief provided after the violations have occurred, Plaintiffs' options for enforcement should not be limited to such retrospective relief.

**Any determination of "immediate hazard" pursuant to paragraph 3(c) must be made on the basis of current conditions, and must be pertain to a hazard created by the individual's dwelling.**

Paragraph 13(c) of the Injunction retains the Court's jurisdiction both to enforce and to *clarify* the terms of the terms of the Injunction. Plaintiffs request that the Court's order clarify that application paragraph 3(c)'s immediate hazard exception of must be related to harms or risks that are directly related to the individual's dwelling or presence in a particular location, not the existence of an encampment as a whole, and that the immediate hazard determination must be made based on current conditions, not conditions that existed in the past.

The County's interpretation of immediate hazard under paragraph 3(c) seeks to create an exception that swallows the rule. Many of the concerns raised in the County's opposition and attached declarations pertain to general health and safety concerns attendant to any homeless encampment—they are not specific to this particular location. Some are not related to individuals' dwellings at all. *See* Opposition, *supra,* at 3 (citing examples of a person who lived at encampment the overdosing at a completely different location). And some are based on threatening and criminal actions taken by people who are not residents of the JRT encampment against encampment residents. *See, e.g.,* Opposition, *supra,* at 3 (citing to an "armed and menacing individual" without allegations that the person was an encampment resident or even on the JRT because of the encampment); Declaration of Jonathan Umholtz, Exhibit A to Defendant County of Sonoma's Opposition, ECF No. 117-1, at ¶ 4. Such concerns, although they relate to health and safety generally, are not specific immediate hazards as contemplated by the Injunction.

Further, for many of the alleged hazards described by the County, there are alternative methods to addressing those hazards that are both less harmful to encampment residents and more effective than clearing the encampment. Indeed, the County cites to some of these alternatives in its briefing, including citation and arrest of people who commit violent or threatening crimes (Opposition, at 3), public health interventions and medical treatment to respond to health issues (Lopez Dec., at ¶ 8, and, most importantly, offering adequate shelter so that people have a safe, appropriate alternative to living on the JRT (*id.* at 9).

Finally, any determination of immediate hazard must be made on an individualized basis, based on current conditions. *See* Injunction, at ¶ 3(c)(i): "An immediate hazard or obstruction is one where *the homeless individual is at risk* of imminent injury or death, *or their presence* (1) creates a risk of imminent injury or death to others, (2) creates a risk of damage to the property of others, or (3) interferes with access to or use of public facilities." (emphasis added). The County has made a general determination that the encampment has a whole constitutes a hazard, but not that

individual dwellings create immediate hazards. *See* Opposition. But, as the County notes, conditions are always changing. *See* Opposition, *supra*, at 4. And, if the County is successful in placing a substantial number of encampment residents by January 31, the encampment will be substantially smaller, and the alleged hazards cited in the County's January 14 declaration may no longer be present. Even if the Injunction allowed for a generalized determination of immediate hazard, the County should not be allowed to clear a 50-person encampment on January 31 without complying with paragraph 3(a) on the basis of immediate hazards that allegedly existed in a 250-person encampment on January 14.

Accordingly, Plaintiffs request that the Court clarify that paragraph 3(c)'s immediate hazard exception may only be invoked based on conditions that are directly related to an individual's dwelling or presence in a particular location, and that such a determination must be made on current conditions.

**Plaintiffs and their counsel have engaged in good faith with the County regarding the issues raised in this request.**

The County accuses Plaintiffs of acting in bad faith. However, until the latter part of January, Plaintiffs had understood that the County's plan to be to offer every encampment resident shelter and housing prior to any enforcement action, and that the January 31, date was a goal, not a hard deadline. The combination of the January 15 Notice to Vacate and the January 21 press report referenced in Plaintiffs' Request, alerted Plaintiffs' counsel to the County's plans, and Plaintiffs notified Defendants of their concerns promptly.

Plaintiffs have sought to aid the County in providing assessment and adequate shelter to trail residents, and the County's accusations of withholding information and interfering with assessment are both unfounded and unfair. *See* Opposition, at 5. For example, the January 28 appointment referenced in the De La Cruz and Lopez declarations was scheduled for 9:30 a.m., the same time as the parties' call with the Court, of which the parties had only 20 minutes' notice. Defendant County of Sonoma's Opposition, Exhibit 4, Declaration of Alegría De La Cruz, ECF 117-4, at ¶¶ 10-12; Exhibit 7 to De La Cruz Dec. And Ms. Roman has worked with IMDT staff to facilitate an assessment for that family today. Plaintiffs also note that, while the Opposition state that Ms. Roman "insisted" that County staff provide a hotel voucher to a particular individual, Ms. Lopez's declaration, cited as the source of this allegation, states that the individual, who was "angry" demanded the hotel voucher. Opposition, at 6, Lopez Dec., at ¶ 12. At the same time, Ms. Roman has identified and communicated to the County the names over 60 individuals, their desire for assessment and/or shelter, and information about their shelter needs since January 24, 2020. *See* Plaintiff's Request, Ex. 7, 8, 9; Ex. 9 to De La Cruz Dec. The County's perceived lateness of these requests is a direct result of its own self-imposed January 29 and January 31 deadlines.

**Conclusion**

      Plaintiffs therefore request that the Court issue an order requiring the County to comply with paragraph 3(a) of the Injunction before forcing any individual to move from the Joe Rodota Trail. Additionally or in the alternative, Plaintiffs request that the order clarify the meaning of immediate hazard to ensure that, if Defendants invoke the immediate hazard exception to take enforcement action, they do so in a way that is consistent with the Injunction's requirements.

Respectfully submitted,

Melissa A. Morris
Staff Attorney, Public Interest Law Project

/s/

Jeffery Hoffman, Managing Attorney
California Rural Legal Assistance