SUE A. GALLAGHER, City Attorney (SBN 121469)
ROBERT L. JACKSON, Assistant City Attorney (SBN 101770)
City of Santa Rosa
100 Santa Rosa Avenue, Room 8
Santa Rosa, California 95404
Telephone: (707) 543-3040
Facsimile: (707) 543-3055

Attorneys for Defendant City of Santa Rosa

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - San Francisco Division

| | |
|---|---|
| NICHOLLE VANNUCCI, ELLEN BROWN and DEBORAH DRAKE, individuals; and HOMELESS ACTION!, an unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, SONOMA COUNTY COMMUNITY DEVELOPMENT COMMISSION, CITY OF SANTA ROSA, and DOES I to XX,<br><br>Defendants. | CASE NO. 3:18-CV-01955-VC<br><br>**DECLARATION OF KYLE DUGGIN IN OPPOSITION TO MOTION TO ENFORCE AND CLARIFY PRELIMINARY STIPULATED INJUNCTION**<br><br>Date: December 3, 2020<br>Time: 10:00 a.m.<br>Ctrm: 4, 17th Floor<br>Judge: The Hon. Vince Chhabria |

I, Kyle Duggin, declare as follows:

1. I am the Vehicle Abatement Officer within the Traffic Division of the Santa Rosa Police Department. I have personal knowledge of the facts set forth in this declaration and if called as a witness, could and would testify competently thereto.

2. As Vehicle Abatement Officer I am primarily responsible for enforcement efforts concerning automobiles, trucks, RVs, and trailers which are in violation of Vehicle Code provisions or Santa Rosa parking ordinances. These typically are violations of registration laws, abandoned and inoperable vehicles, parking violations, disposal of gray water from Rvs. I am

1

authorized to issue citations and to institute abatement proceedings. I also serve as a "tow hearing officer" in the event an individual whose vehicle as been towed contests that action.

3. I am familiar with Corporate Center Parkway. It is in a business park in southwest Santa Rosa. Historically, it has been a street where people in RVs park overnight and where delapidated, sometimes inoperable vehicles or trailers which are not road worthy, are left or parked unattended. The City has experienced an increase in RVs parked on city streets as Santa Rosa,, unlike many communities in the North Bay, has not as yet enacted a city wide ordinance limiting parking.

4. In my experience, many owners of old and dilapidated RVs and trailers, often with registrations expired for many years, often inoperable, have "donated" their vehicles to help the homeless. Many individuals I have encountered, when I discover that they are not the registered owner and ask "Where'd you get this trailer" will tell me, ". . . .some charity gave it to me . . ." or "I saw a Craigslist ad offering free trailers to homeless". Often such "gifted" trailers are towed to and simply left on the side of the road without a tow vehicle attached. Frequently, the occupant of a RV or trailer is not the registered owner. These vehicles can sometimes present line of sight hazards to other motorist and pedestrians. They sometimes occupy parking spaces used by nearby businesses and offices. They sometimes discharge gray water in violation of the Health and Safety Code into storm drains in violation of the Fish & Game Code. They often are in violation of posted no parking signs.

5. Throughout the spring and continuing into the early summer there was a steady escalation of vehicles on Corporate Center Parkway. Occupants were instructed frequently to move, but few if any were cited for violation of the 72 hour ordinance and no vehicle was impounded for that violation.

6. On July 9 after notice and outreach efforts were undertaken, closure commenced on Corporate Center Parkway. Most citations were for registration violations, inoperable or not roadworthy condition, or gray water disposal into the storm drains. I participated in that closure effort.

7. I have reviewed the declarations of Ms. Pishgar, Mr. Baldwin, Mr. Coleman, Mr.

Vincent, and Mr. Souvannhoxay and am prepared to testify, should the Court so require. From my review of DMV records, reports and my body worn camera video, I can state the following:

- Ms. Pishgar: I have no record of and cannot find any records of an abandoned vehicle abatement related to this person. Nor, can I find any vehicles registered in Kiana Pishgar's name through the DMV. I note Ms. Pishgar in paragraphs 5, 7 and 10 mentions three previous vehicles being towed but she does not name the license plates, location, or why they were towed. I note in paragraph 11 that Ms. Pishgar references a Notice of Intent to Abate dated February 26; however, the violation marked is the City Ordinance 11-36.010 which covers the storage of storage of an unattached trailer on city streets which is not an infraction covered by the Injunction. I note too that she references receiving a ticket in paragraph 12 for violation of the two hour time limit under City Ordinance 11-28.030 which is not covered by the Injunction If Pishgar is who I think she is, she has been living in her trailer on Sebastopol Rd., since at least February. I have spoken with her several times over the months about what the city ordinance and state vehicle codes relating to 72 hours are and warned her that she could be towed if they don't continuing to move as required by the ordinance; however, I have not cited her for that infraction, arrested her, or taken any steps toward impoundment for violation of that ordinance.
- Mr. Baldwin: I note that Mr. Baldwin was sent two certified AVA letters on 12/19/19 and 2/10/2020. The trailer had a last know registration date of 4/2011 and was also on a NON-OP status with the DMV. I note further that it was towed by an officer on 2/20/20 for registration. I was not the officer, but can say that normally, we give the occupants time to retrieve items out of the trailer, but once the tow truck arrives, this time is cut off. Occupants can usually retrieve items from the trailer at the tow yard if they are the registered owner of the trailer (which Mr. Baldwin was not) or the occupants have a release for property from the department.

- Jerome Coleman: I note that Mr. Coleman states that he was given the trailer, had it towed and left on Corporate Center and when, on July 9, the closure commenced he "found someone" to tow it. Mr. Coleman did not "find someone"; rather, homeless advocates (the white van that follows the department to all clean-ups) swooped in and attached the ball hitch to the back of the van somehow and drove him away to avoid towing. Unfortunately, the van was not equipped properly to secure the trailer and only made it about a mile away on Sebastopol Rd. near Fresno Av. and dropped the trailer. I have reviewed the body worn camera video of my interaction with Mr. Coleman at that location in which I explained to him the condition of the trailer, noting all windows were broken out, the siding of the trailer was bent and pulling away from the frame, the interior of the trailer was gutted with only property, wood, and trash inside. I advised Mr. Coleman his trailer was not safe for the road and that I was towing it. I asked Mr. Coleman to produce any paperwork (title, bill of sale) he had, but he could not. There were no license plates and the VIN number had been scratched off. Mr. Coleman was given about 20 minutes to removed personal possessions, but used most of the time to argue with officers on scene. My body worn camera video shows him removing a large portion, if not all of his belongings from the trailer.
- John Vincent: I note an AVA certified letter was sent to Mr. Vincent of 7/27/2020 regarding his motorhome. I have reviewed body worn camera video of my interaction with Mr. Vincent on September 3, 2020. It shows his friend showing me a pink paper. I explained that the injunction did not apply. In the body worn camera video, I never said "I don't know anything about that." The video also shows and it also shows Mr. Vincent's friend say that I have been more than lenient, that they understand the city/state ordinances, and know they have been on Sebastopol Rd. for a long time (and currently still there). John comes in and out of video footage because he immediately called Alicia Roman. I would also note that body worn camera video of our September 18 encounter does not show the presence of seven officers, but only me and two others.

       8.      I am informed that as a result of the July 9 closure efforts at Corporate Center Parkway, a number of individuals were offered services. Of the individuals that HOST contacted, nine individuals initially accepted services at the Samuel Jones Hall Homeless Shelter or the Safe Social Distancing Program in the parking lot of Finley Community Center.

       9.      During the cleanup, the Police Department made arrests for warrants and facilitated the towing of RVs/vehicles for vehicle code violations, but no arrests were made for unlawful camping. The City's Public Works crews removed more than 104 yards of debris, including paint, oil, and tires.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 5, 2020, Santa Rosa, California.

*[Signature]*

KYLE DUGGIN

5

Declaration in Opposition to Motion to Enforce        3:18-CV-01955-VC