ROBERT H. PITTMAN #172154
County Counsel
MATTHEW LILLIGREN #246991
Deputy County Counsel
JOSHUA A. MYERS #250988
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: matthew.lilligren@sonoma-county.org


Attorneys for Defendants
COUNTY OF SONOMA and SONOMA
COUNTY COMMUNITY DEVELOPMENT
COMMISSION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLLE VANNUCCI, ELLEN BROWN, and SHANNON HALL, individuals; and HOMELESS ACTION!, an unincorporated association,<br><br>          Plaintiff,<br><br>vs.<br><br>COUNTY OF SONOMA, SONOMA COUNTY COMMUNITY DEVELOPMENT COMMISSION, CITY OF SANTA ROSA, and DOES I to XX,<br><br>          Defendants.<br>                            / | **Case No. 18-cv-01955-VC**<br><br>**DEFENDANTS COUNTY OF SONOMA and SONOMA COUNTY COMMUNITY DEVELOPMENT COMMISSION'S OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY PRELIMINARY INJUNCTION**<br><br>Date:  December 3, 2020<br>Time:  10:00 a.m.<br>Dept:  4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## I.      INTRODUCTION

Defendants County of Sonoma and Sonoma County Community Development Commission (CDC) submit this partial opposition to Plaintiffs' Motion to Enforce and Clarify Preliminary Stipulated Injunction only as it relates to the request to clarify the terms of the stipulated injunction.  The majority of Plaintiffs' motion is directed at the conduct of the City of Santa Rosa and only seeks to an "order enjoining the City from continuing to engage in the violations described" in the motion (See Motion at p. 19, Section IV.).  The County and CDC were not involved in the six enforcement actions challenged in Plaintiffs' motion and Plaintiffs' do not seek to enjoin the conduct of the County or CDC.  Accordingly, the County and CDC limit their opposition to Plaintiffs' request to "clarify" the injunction as set forth in Section III.B. of the motion.

At the outset, it is important to note that the injunction that Plaintiffs now seek to "clarify" was the product of months-long negotiations between the parties.  As the Court is well aware, this was a voluntary agreement and a number of the terms represent the outer bounds to which the parties would agree.  Plaintiffs cannot now seek to renegotiate those terms under the guise of a request for "clarification" when they are proposing to add terms to the injunction that were expressly rejected by the parties.  Adding additional terms to the injunction at this point would fly in the face of the voluntary nature of the agreement.  Accordingly, the County and CDC request that the Court deny Plaintiffs' request to clarify the terms of the injunction for the reasons set forth below.

## II.     PLAINTIFFS' REQUEST FOR CLARIFICATION

### 1.  Plaintiffs Request to Expand the Definition of "Enforcement Action" Goes Well Beyond the Terms of the Injunction to Which the Parties Agreed.

In their motion, Plaintiffs seek an order from the Court "clarifying that 'enforcement action' includes situations where a law enforcement officer commands an unhoused person to leave public property, and that an order to relocate must comply with the terms of the Injunction."  (See Motion (Dkt. #134), at p. 17)   This requested interpretation is not supported by the language of the Injunction, the negotiations leading to the agreement between the parties, or the applicable law under *Martin v. City of Boise*.

The Injunction that was agreed to by the parties defines the three types of Enforcement Actions which trigger Defendants obligations to provide advance notice and an opportunity for assessment and adequate shelter: "(1) issuance of a citation to a homeless person, (2) an arrest by County and/or City personnel of a homeless person, (3) closing or moving a dwelling or encampment; and/or (4) seizing property from a dwelling or encampment . . . ."  (See Stipulation and Order for Preliminary Injunctin (Dkt. # 109-1)(hereinafter "Injunction"), ¶ 2.c.i.)

As the Court will recall, the initial versions of the Injunction included "a direction to relocate" in the definition of Enforcement Action.  This provision was removed at the request of the County, and specifically, the County and CDC made clear that they would not agree to the Injunction if this langauge was included because it imposed additional

Defendants County and CDC's Opposition                              Case No. 18-cv-01955-VC
to Plaintiffs' Motion to Clarify Preliminary Injunction

legal requirements beyond what was required under *Martin v. City of Boise*, 920 F.3d

584, 616 (9th Cir. 2019).  Although the negotiations of the terms of the injunction

occurred in the course of settlement discussion, courts have specifically recognized that

testimony concerning compromise negotiations is admissible where testimony is not

offered to demonstrate that defendant was or was not liable but rather to demonstrate

what the terms of settlement were. *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d

939, 944 (7th Cir. 1982); see also *Am. Bridge Co. v. Providence Place Grp*., 263 F. Supp.

2d 330, 336 (D.R.I. 2003) ("Rule 408 does not prohibit [a party] from offering settlement

negotiations into evidence to explain the terms of [the] settlement agreement.")

Here, the previous negotiations regarding the injunction are direct evidence

regarding Plaintiffs' request for "clarification" of the injunction and must be considered

by the Court as evidence that the parties never intended an enforcement action to include

"a direction to relocate" as that term was expressly removed from the final version of the

Injunction.  Plaintiffs cannot attempt to reinsert terms into the Injunction that were

expressly rejected under the guise of a request for clarification.

While Plaintiffs attempt to argue that an "enforcement action" includes the an

"order to relocate" under the definition of "closing or moving of a dwelling or

encampment," this interpretation is contrary to the ordinary and plain words of that

phrase and the negotiations leading to the Injunction.  The plain meaning of "closing or

moving a dwelling or encampment" means the physical act itself.  This could be

accomplished by fencing off an area and prohibiting access to an encampment or

4

physically picking up ones belongings and moving them to another location.  The words in their traditional and ordinary sense have a straightforward meaning that does not include an order to relocate, particularly when the history of the negotiations leading to the injunction are taken into account.

Moreover, expanding the terms of the Injunction to include an "order to relocate" as a form of enforcement action that would trigger the obligations to provide notice and an offer of shelter is contrary to the express holding in *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019).  Martin specifically held that the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter.  (*Id*. at 616.)

As observed by one District Court interpreting the limitations of the holding in *Martin* to actual <u>criminal sanctions</u>:

> the Eighth Amendment only bars the City from criminally prosecuting
> Plaintiff for sleeping on public streets when he has no other place to go to.
> See Martin, 920 F.3d at 603. Courts following Martin have declined to
> expand its holding beyond criminalization of homelessness. See Aitken,
> 393 F. Supp. 3d at 1081-82 (collecting cases). Therefore, Plaintiff's
> allegation that the City has not permitted him to stay at one encampment
> for the past three years fails to state an Eighth Amendment claim. See id. at
> 1082 ("Martin does not limit the [c]ity's ability to evict homeless
> individuals from particular public places.").

*Young v. City of L.A*., 2020 U.S. Dist. LEXIS 23369, 2020 WL 616363, at *12-13
(C.D. Cal. Feb. 10, 2020).

Such an interpretation is consistent with this Court's prior orders.  In denying Plaintiffs' Motion for Emergency Relief attempting to stop the County from clearing encampments from the Joe Rodota Trail, this Court recognized that "the injunction does not require the defendants to identify and offer housing to every encampment resident before initiating the process of clearing the encampment; indeed, compliance with any such requirement would almost certainly be impossible."  Instead, the Court found that the County's "intention to offer an adequate housing alternative to each camper _before taking enforcement action_ against that camper" was "consistent with the injunction to which the parties have agreed."  See Order Denying Request for Emergency Relief at pp. 1-2 (Dkt. No. 115) (emphasis added)

Therefore, Plaintiffs' attempt to rewrite the terms of the Injunction would not only be contrary to the parties prior negotiations but would be inconsistent with the legal requirements under _Martin v City of Boise_.

## 2.  Plaintiffs' Request for Clarification of the "Immediate Hazard or Obstruction" Exception to the Injunction is Unnecessary

While it is difficult to discern what Plaintiffs actually ask the Court to "clarify" about the Injunction, there appear to be two requests: (1) that Defendants provide advance written notice, notice of rights, and an offer of shelter when possible, even if action is taken under the "Immediate Hazard or Obstruction" exception of the Injunction and (2) that "Defendants consider the totality of the circumstances when making

6

immediate hazard determinations," including public health recommendations regarding COVID-19.

First, Plaintiffs' request under Section III.B.2. seems more appropriately reserved for the Court's decision of whether the City's actions violated the Injunction as opposed to a need to clarify the Injunction's existing language.  Second, the existing language of the Injunction already addresses these issues and there is no need to further limit the Injunction as to specific circumstances, hazards, or other considerations.  While the County has and does endeavor to provide a Notice of Rights, a Notice to Vacate, and offer of shelter to individuals whenever possible, there are circumstances where it may not be feasible or is not legally required.  The Injunction recognizes this general approach and any effort to further define these requirements would be unwieldy.

Specifically, the Paragraph 3.c. of the Injunction states: "In the case of an immediate hazard or obstruction, an enforcement action may be taken without following the procedures outlined in Paragraphs 3(a) and 3(b)."  Paragraphs 3(a) and 3(b) are the sections that require the Notice of Rights, an offer of shelter, and an opportunity to relocate.  Under the express terms of the Injunction, Defendants need to comply with these obligations in the event of an Immediate Hazard or Obstruction.  The only qualification is that Defendants should "nonetheless attempt, whenever possible, to provide advance notice to dwelling occupants of the intent to clear the dwelling or encampment."  (See Paragraph 3.c.ii)  Thus, the provisions of the Injunction already clearly address the issues raised by Plaintiffs and there is no need for further clarification.

7

As to Plaintiffs' second request that the totality of the circumstances (including COVID-19) must be taken into consideration, this is a further attempt to add language to the injunction that was not agreed to by the parties.  There is no requirement in the Injunction that Defendants provide the additional facilities requested by Plaintiffs or need to meet additional obligations to establish an immediate hazard or obstruction other than the definition set forth in Paragraph 3.c.i.

3. **Plaintiffs' Request for Clarification that Written Notice is Required Even in Cases of Immediate Hazard or Obstruction Unless "Impracticable" Attempts to Change the Standard Included in the Injunction**

Plaintiffs' third request for clarification in large part overlaps with its second request and again is more appropriately addressed at whether the City violated the injunction as opposed to a need to clarify the terms.  As discussed above, the Injunction already deals with this situation.  Paragraph 3(c)(ii) of the Injunction states: "Even in the event of an immediate hazard or obstruction, law enforcement shall nonetheless attempt, whenever possible, to provide advance notice to dwelling occupants of the intent to clear the dwelling or encampment."  Otherwise, no advance notice is required under Paragraph 3.c.  Thus, the Injunction already addresses the standard for when such attempts at notice should be made – "whenever possible" – and there  is no need for further clarification by the Court in the abstract.

## III.    CONCLUSION

For the reasons discussed above, the County and CDC respectfully request that the Court deny Plaintiffs request for clarification of the Injunction and not rewrite the terms of the Injunction to which the parties agreed.

Dated: November 5, 2020                    ROBERT H. PITTMAN, County Counsel


By:  /s/ Matthew R. Lilligren
       Matthew R. Lilligren
       Deputy County Counsel
**Attorneys for Defendants County of Sonoma and Sonoma County Community Development Commission**

Defendants County and CDC's Opposition                    Case No. 18-cv-01955-VC
to Plaintiffs' Motion to Clarify Preliminary Injunction