UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELESS ACTION!, et al., <br><br>   Plaintiffs, <br><br> v. <br><br> COUNTY OF SONOMA, et al., <br><br>   Defendants. | Case No. 18-cv-01955-VC <br><br> **ORDER DENYING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON STANDING** <br><br> Re: Dkt. No. 256 |

The defendants' motion for summary judgment is denied. Juanita Butterfly and Homeless Action! have established standing at the summary judgment stage. This order assumes the reader's familiarity with the facts, relevant legal standards, and arguments made by the parties.

Butterfly has standing to seek injunctive relief. She presents evidence that she is homeless, has had her belongings taken by the defendants during sweeps, and has sought and been denied disability accommodations (such as non-congregate shelter). *See* Butterfly Decl., Dkt. No. 260; *see also* Butterfly ROG Responses at 10–11, Dkt. No. 261-1. The defendants respond that over the past several years, Butterfly's belongings have at times been stored instead of thrown away and that she has been offered non-congregate shelter but had to leave those shelters because of rule violations. Even though her belongings have sometimes been stored, she has presented evidence that they were recently thrown away three times, in November 2024, April 2025, and May 2025. *See* Butterfly Decl. ¶¶ 13–15. And she presents evidence that she recently requested and was denied accommodations during a shelter stay at Sam Jones Hall in April 2025. *Id.* ¶ 19. That is enough to support standing based on a high likelihood of future

injury.[1]

Homeless Action! (HA) presents a very close question, but still has organizational standing at this stage. HA puts forth two types of injuries it has suffered as an organization. First, it says that it has "diverted resources—primarily volunteer time—away from core activities like educating the larger community and advocating for proactive approaches to ending homelessness in order to respond to encampment sweeps." Opp. at 22. This injury is no longer cognizable. An organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024).

Second, HA argues that the defendants' actions have "directly affected and interfered" with its "core business activities," which includes providing resources for and otherwise supporting homeless residents in the community. *Alliance for Hippocratic Medicine*, 602 U.S. at 395 (describing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). That type of organizational injury remains cognizable after *Alliance for Hippocratic Medicine*. *Id.* at 395–96. However, two aspects of this theory make the question close.

First, the evidence on whether providing direct services was one of HA's "core" activities before the defendants' sweeps started in about 2017 is somewhat mixed. On one hand, HA submitted several declarations by HA members stating that the organization's activities have always included "outreach and direct assistance" to homeless residents. Simons Decl. ¶ 10, Dkt. No. 259; *see* Butterfly Decl. ¶ 5 (describing how HA has provided her food, transportation, and help requesting placements and reasonable accommodations); Yanez Decl. ¶ 17–18, Dkt. No. 266 (describing how HA provided food, clothing, transportation, and help filing requests as early as 2014). On the other hand, HA has said that it "shift[ed] away from its original core activities of advocating for incremental improvement of services" to "emergency mode of monitor[ing]

---

[1] While the defendants argue that Butterfly has been kicked out of non-congregate shelters because of rule violations, they present no evidence about how those previous violations affect the defendants' ability (or inability) to provide her accommodations now. Without that evidence, and given her current status, the injunctive relief requested could redress her injuries.

and trying to stop the sweeps." HA ROG Responses at 21, Dkt. No. 255-4. This statement suggests that HA was primarily an advocacy organization, and only turned to direct support in response to the defendants' actions. At least at the summary judgment stage, however, there is a genuine dispute of fact as to whether HA's pre-2017 core activities included direct support.

Second, it's unclear to what extent HA's desired injunctive relief could redress its alleged injury. HA explains that constant sweeps and seizure of unhoused residents' property makes it harder for HA to contact its homeless members and to provide them material support. *See* Simons Decl. ¶ 14; Garcia Decl. ¶¶ 9–10, Dkt. No. 263; Butterfly Decl. ¶ 31. But after *Grants Pass*, the plaintiffs are no longer seeking to enjoin all encampment sweeps. Instead, they seek to enjoin the defendants from seizing people's individuals' property without notice, from placing them in more dangerous locations, and from denying reasonable disability accommodations in shelter placements and other homelessness-related services. It is somewhat unclear how much easier it would be for HA to provide its direct services even if the defendants were enjoined from doing all of that. But there is some evidence that HA's injury would at least be partially redressed. For example, Butterfly explains that "people are more hesitant to leave their possessions and participate in activities or meetings for Homeless Action! because they may lose them otherwise." Butterfly Decl. ¶ 31. If those people had notice before a sweep and knew that the defendants' would store their belongings instead of throwing them away, arguably they would feel more comfortable participating in HA activities. And ultimately, the scope of the possible injunctive relief in this case is heavily intertwined with the merits of HA's claims. That said, the Court is skeptical that, once the evidence is presented at trial, HA will be able to prove that the injunctive relief it seeks will meaningfully redress the organizational injury it asserts.

Finally, the defendants argue that the ADA claims should be dismissed because HA is not itself a "qualified individual with a disability." But under current Ninth Circuit law, HA has "alleg[ed] discrimination on the basis of disability" and "has standing to sue under the ADA on its own behalf" so long as it establishes a direct organizational injury. *Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 813 & n.22 (9th Cir. 2023). As described above, HA narrowly

has done so.

**IT IS SO ORDERED.**

Dated: July 3, 2025

VINCE CHHABRIA
United States District Judge